J-S10043-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JORDYN M. KENNEY | : | |
| | : | |
| Appellant | : | No. 920 MDA 2024 |

Appeal from the Judgment of Sentence Entered May 31, 2024
In the Court of Common Pleas of Lebanon County Criminal Division at
No(s):  CP-38-CR-0000863-2023

BEFORE:  BOWES, J., OLSON, J., and SULLIVAN, J.

MEMORANDUM BY BOWES, J.:[*]                                    **FILED MARCH 25, 2026**

Jordyn M. Kenney appeals from the judgment of sentence of thirty days of probation and a $1 fine imposed following his conviction for possession of marijuana.  We affirm.

The following facts were established at the suppression hearing.  At approximately 10:00 p.m. on May 21, 2023, Sergeant David Troxell of the South Lebanon Township Police Department stopped his patrol car to assist Appellant when he flagged the sergeant down as he stumbled onto an unlit road.[1]  Due to Appellant's unsteady gait and the lack of visibility on the street, the sergeant was concerned that Appellant would be struck by a vehicle.

---

[*] This case was reassigned to the author on December 15, 2025.

[1] The sergeant was employed as a corporal at the time of the stop but has since been promoted.  **See** N.T. Bench Trial, 5/31/24, at 4.

Sergeant Troxell initially suspected that Appellant was under the influence of alcohol and administered a field sobriety test, which indicated that he was not. Based upon Appellant's suspicious demeanor during the stop, however, the sergeant nonetheless believed that he was intoxicated by a controlled substance. He therefore asked Appellant for consent "to pat him down for weapons or drugs." *See* N.T. Suppression, 10/4/23, at 11. Appellant acquiesced. During the search, Sergeant Troxell discovered, *inter alia*, a previously opened cigarillo package in Appellant's inner jacket pocket. Pursuant to his training and experience, the sergeant knew that marijuana was typically stored and smoked in cigarillo wrappers. Appellant immediately apologized for what was inside the package before Sergeant Troxell unzipped it. Once opened, the sergeant uncovered two marijuana cigarettes.

Appellant was arrested and charged with possession of a small amount of marijuana. He filed a motion to suppress the evidence obtained from the search of his jacket pocket, maintaining that the search exceeded the scope of his consent. At the ensuing hearing, Sergeant Troxell outlined the above facts. The court ordered additional briefing and subsequently issued an opinion denying Appellant's motion. A bench trial followed. The court found Appellant guilty of the single charge and imposed the above-referenced sentence.

Appellant timely appealed, and he and the trial court complied with the requirements of Pa.R.A.P. 1925. He now raises the following questions for our

determination: "Did the trial court err when it denied Appellant's omnibus pre-trial motion by finding the pat-down search conducted by [Sergeant] Troxell to be lawful? Specifically, did the trial court err when it found that Appellant had consented to the search conducted by [Sergeant] Troxell?" Appellant's brief at 6 (some capitalization altered).[2]

We begin with the applicable legal principles:

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the [suppression hearing] and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. The suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. Phillips*, 327 A.3d 1236, 1241 (Pa.Super. 2024) (cleaned up).

It is well-settled that a warrantless search is generally illegal but may be lawful where the circumstances fall into "specifically established and well-delineated exceptions to the warrant requirement." *Commonwealth v.*

---

[2] Despite its title, Appellant's omnibus pre-trial motion only sought suppression of the evidence obtained during the search. *See generally* Omnibus Pre-Trial Motion to Suppress, 4/14/24.

*Arrington*, 233 A.3d 910, 915 (Pa.Super. 2020) (cleaned up). This Court has explained that "[s]uch exceptions include the consent exception, the plain view exception, the inventory search exception, the exigent circumstances exception, the automobile exception[,] the stop and frisk exception, and the search incident to arrest exception." *Commonwealth v. McMahon*, 280 A.3d 1069, 1072 (Pa.Super. 2022) (cleaned up).

Where a suspect consents to a search, the following legal precepts apply:

> We have long approved consensual searches because it is no doubt reasonable for the police to conduct a search once they have been permitted to do so. Although a warrantless, but consensual, search is constitutionally permissible, obtaining consent is an investigative tool utilized by law enforcement. It allows police to do what otherwise would be impermissible without a warrant. As a consent search is in derogation of the Fourth Amendment, there are carefully demarked limitations as to what constitutes a valid consent search.
>
> First, consent must be voluntarily given during a lawful police interaction . . . .
>
> If consent is given voluntarily, the ensuing search must be conducted within the scope of that consent. The standard for measuring the scope of an individual's consent is one of objective reasonableness. We do not ascertain the scope of consent from the individual's subjective belief or the officer's understanding based on his or her training and experience but based on what the typical reasonable person would have understood by the exchange between the officer and the suspect.
>
> . . . .
>
> The burden is on law enforcement officials to conduct a search within those parameters. An individual is not required to police the police; absent another exception to the warrant requirement, when a search exceeds the scope of an individual's given consent,

- 4 -

the search is illegal regardless of whether the individual objected or revoked his or her consent.

*Commonwealth v. Valdivia*, 195 A.3d 855, 862, 868 (Pa. 2018) (cleaned up).

Unlike the consent exception, the "sole justification of" a frisk pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968), "is the protection of the police officer[,] and it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." *Commonwealth v. Gibson*, 333 A.3d 710, 726 (Pa.Super. 2025) (cleaned up). Closely related to the *Terry* frisk exception is the plain feel doctrine, which "allows officers to remove immediately apparent illegal contraband from within a suspect's clothing during a lawful frisk." *Interest of T.W.*, 261 A.3d 409, 422 (Pa. 2021). Pursuant to these coinciding principles, "a police officer may remove an object from within a suspect's clothing under the reasonable suspicion that the object is a weapon," or "if, by touch, it is immediately apparent that the object is illegal contraband." *Id*. (cleaned up).

Appellant acknowledges that the *Terry* frisk exception is distinct from the consent exception, and that he consented to a search. *See* Appellant's brief at 16. However, he avers that because he agreed to a "pat-down" search, the caselaw governing the *Terry* frisk exception is applicable and informs the Court "about the expectations reasonable people have as to the scope of a pat-down search, and the nature of the consent they are providing

- 5 -

when they consent to a pat-down search." *Id*. at 16-17. Citing law governing the *Terry* frisk exception and the plain feel doctrine, Appellant argues that Sergeant Troxell exceeded the scope of his consent when he removed the cigarillo package from Appellant's pocket and opened it where the nature of the contraband was not immediately apparent. *Id*. at 17-22.

The trial court concluded that Appellant's consent to a pat down for drugs and weapons "removed this search from the one governed by *Terry* to one governed by the laws pertaining to a consensual search." Trial Court Opinion, 11/15/23, at 4. It explained that had Sergeant Troxell's search been a *Terry* frisk, he "would not have been justified in progressing any further once he identified . . . the cigarette package." *Id*. Since Appellant "afforded [Sergeant] Troxell with express permission to search his body for weapons or contraband[,]" however, the sergeant "was not prevented from taking the package of cigarettes into his hands" and search the contents thereof for drugs. *Id*. at 5-6.

We agree with the court that Appellant has improperly conflated the *Terry* frisk exception and the consent exception. Plainly, Sergeant Troxell's request for permission to "pat down" Appellant for weapons or drugs does not equate to a *Terry* frisk. Accordingly, only the law governing the consent exception is applicable. Since Appellant does not contest that he voluntarily consented to a search during a lawful interaction, the focus of this appeal concerns whether Sergeant Troxell exceeded the scope of that consent based

upon what a reasonable person would expect under these circumstances.[3] *See Valdivia*, 195 A.3d at 862.

Our decision in *Commonwealth v. Sullivan*, 293 A.3d 588, 2023 WL 1434289 (Pa.Super. 2023) (non-precedential decision), is instructive. There, Sullivan and her passenger were pulled over for a broken taillight. The officer conducting the traffic stop classified it "as an unknown risk stop, meaning he had no information that led him to believe that there was any threat or immediate risk or criminal activity other than the traffic violation." *Id*. at *1 (cleaned up). After issuing a warning, the officer informed the occupants that they were free to leave and began to walk away, but he immediately returned and asked to search the vehicle. Notably, the officer "did not tell [Sullivan] what he was searching for or why he wanted to search the vehicle." *Id*. at *2. He obtained Sullivan's consent, uncovered an opaque cosmetic bag from the glove compartment, which did not appear to him to be "out of the ordinary," and found two glassine bags of heroin inside. *Id*.

The trial court granted Sullivan's motion to suppress, and this Court affirmed. After determining that Sullivan voluntarily consented to a search of her vehicle, we concluded that the search of the makeup bag was outside the

---

[3] Although Appellant's statement of questions appears to focus on whether he gave consent, the argument section of his brief bears out that he only challenges the extent of Sergeant Troxell's search following his consent. *See* Appellant's brief at 11 (summarizing his argument that the sergeant exceeded the scope of the pat down search to which Appellant had consented).

scope of her consent. This Court stated that a reasonable person would not believe that a search of the vehicle would include the contents of a cosmetic bag located inside of the glove compartment based upon the officer: (1) neglecting to seek permission to "extend the search beyond the general vehicle;" (2) failing to provide "what he was searching for or why he requested to search the car;" and (3) having "no suspicion of criminal activity" outside the traffic violation. *Id*. at *8 (distinguishing *Florida v. Jimeno*, 500 U.S. 248 (1991), and *Commonwealth v. Yedinak*, 676 A.2d 1217 (Pa.Super. 1996)).

Unlike in *Sullivan*, Sergeant Troxell asked Appellant "for consent to pat him down for weapons or drugs" after suspecting that he was intoxicated. *See* N.T. Suppression, 10/4/23, at 11. Also distinct from the officer in *Sullivan*, the sergeant's request followed a field sobriety test, which ruled out alcohol, but did not resolve his concern of Appellant being under the influence of a controlled substance.

Relevantly, this Court has held that when officers obtain consent to search an individual's car for drugs, they are "free to search any containers within the vehicle that could reasonably contain narcotics." *Yedinak*, 676 A.2d at 1220. In *Yedinak*, this Court determined that the scope of consent included the contents of a cigarette pack and a cough drop container since those items could plausibly store illegal substances. *Id*.

Here, as mentioned, Sergeant Troxell specifically requested to search Appellant for drugs because he suspected that he was intoxicated. It was therefore objectively reasonable for both the sergeant and Appellant to expect that a search for narcotics would include containers typically used to hold them, such as the cigarillo package in Appellant's jacket pocket. *See Jimeno*, 500 U.S. at 249-51 (stating that after the officer informed respondent that "he had reason to believe that respondent was carrying narcotics in his car," it was "objectively reasonable for the police to conclude that the general consent to search respondent's car included consent to search containers within that car which might bear drugs," and that "[a] reasonable person may be expected to know that narcotics are generally carried in some form of a container"). Accordingly, pursuant to the principles governing the consent exception, Appellant is not entitled to relief.

Judgment of sentence affirmed.

Judge Olson joins this Memorandum.

Judge Sullivan files a Dissenting Memorandum.

Judgment Entered.

_____

Benjamin D. Kohler, Esq.
Prothonotary

Date: 03/25/2026